THE KENTON GAS AND ELECTRIC CO. v. DORNEY ET AL.

1. FORFEITURE OF A GAS AND OIL LEASE BY FORCE OF ITS OWN PROVISIONS.

   Where the owner of a certain tract of real estate, subject to a life estate, makes a gas and oil lease, in which it was provided, that, if no well is completed within one year from date, then the grant was to become null and void, unless the lessee pay to such lessor a certain specified sum for each year thereafter such completion is delayed. No well was completed within one year, or at all, and no rental was paid at the expiration of one year, or at all: *Held*, that the affirmative, active things required by the stipulation of the lease, to save it from becoming null and void, were not done, or attempted to be done; and, therefore, the lease became void by the force of its own provisions.

2. SOMETHING ACTIVE MUST BE DONE TO SAVE A FORFEITURE.

   Where such lease contains a provision that its terms can be continued, or rather the grant saved from becoming void, by the payment of money: *Held*, that something active must be done to save the forfeiture. Payment must be made to have a saving effect. The provision is not a negative one, but is distinctly affirmative, and no construction, even the most strained, will allow such lessees to save their rights under the lease, on credit.

3. THE PROVISION FOR FORFEITURE IN THIS LEASE IS MANDATORY.

   The provision for forfeiture in this lease is mandatory, and does not merely confer on the lessor an option to declare a forfeiture for his own protection, but provides for forfeiture absolutely, unless the lessee does something to prevent it.

4. EXECUTION OF A SECOND LEASE—EFFECT.

   Where, after the expiration of the year providing for the forfeiture of the first lease, the owner executes a second lease for the same premises and for the same purposes to a third party: *Held*, that this will be regarded as the exercise of an option and an election by such owner to forfeit and terminate his first lease.

Kenton Gas and Electric Co. v. Dorney et al.

5. A TENANT FOR LIFE CAN NOT MAKE A VALID GAS AND OIL LEASE.

A tenant for life, in possession of real estate, has no right or power to defeat the title or injuriously affect the interest of the remainderman, by alienating or disposing of some portion of the real estate, and inasmuch as oil or gas in their place in land is part of the realty; therefore, such tenant cannot execute a valid oil or gas lease so as to vest the lessees under such lease with any interest in such real estate.

APPEAL from the Common Pleas Court of Hancock county.

DAY, J.

The plaintiff, a duly organized corporation, claims a leasehold estate with the right to drill for and produce oil and gas on the seventy acre farm of W. L. Decker, in Jackson township, Hancock county. Plaintiff's lease was executed on August 17, 1896. The action is brought against Dorney & Harris to enjoin them from entering upon the said seventy acres and drilling for, or producing oil or gas thereon, which it is averred they are threatening to and will do unless restrained; and the prayer of the petition is for a perpetual injunction and the cancellation of two leases, for the same premises, given, one in 1893, by W. L. Decker, and one in 1897, by Mrs. Anna Altman, to the defendants. Defendants Dorney & Harris assert the validity of their two leases and the invalidity of the plaintiff's lease, and ask to have their title quieted as against plaintiff, and for costs.

There is no dispute as to the material and controlling facts. The facts are: Anna Altman has an estate for life in the seventy acres, which she has not formally conveyed away. She, however, put her son W. L. Decker, who owns the fee subject to said life estate, in possession of the seventy acres to occupy and use as his home, and he has so used and occupied the same for more than ten years, and his mother has lived in his family and has been supported by him. The son has paid the taxes for ten or more years. On January 28, 1893, the son made a lease to Dorney & Harris. This lease contains the following provision: "If no well is completed within one year from this date—January 28, 1893— then this grant shall become null and void, unless second party shall pay to the first party seventy dollars for each year thereafter such completion is delayed." No well was completed within one year, or at all, and no rental was paid at the expiration of one year, or at all; but in May, 1897, Dorney & Harris tendered $210 in payment of rent, which was refused by Decker. On August 17, 1896, Decker made and delivered a lease to the Kenton Gas and Electric Company, which company has paid rental, as per contract of lease, up to November, 1898. Both of these leases were valid at their execution, were sufficient in form, and were properly acknowledged and recorded. Mrs. Altman made a lease of the same seventy acres for oil and gas purposes on May 27, 1897, and received $90.00 of the $100.00 rental agreed to be paid her; but the next day paid the $90.00 back to Mr. Harris, and demanded her deed of lease from him, which demand Harris declined to accede to. This last lease was also sufficient in form, and was properly acknowledged and recorded. Each of the leases were for a term of five years and so long as oil or gas was found in paying quantities. Dorney & Harris hauled some material for a derrick on to the premises in May, 1897, and were intending to enter and drill a well, when they were prevented by the temporary injunction allowed at the commencement of this case.

Both parties claim the right to possess and operate the seventy acres; plaintiff, by virtue of the lease of 1896, and defendants, in virtue of the

prior lease of 1893, and the lease from the life tenant, made in 1897; and the question pressing for answer is, which claimant is entitled— which lease is valid and subsisting, if either of them is. If the lease of 1893 is still subsisting and valid, it is manifest that that of 1896 is invalid and ineffectual. If, however, the lease of 1893 has become forfeit and void from any cause, the lease of 1896, so far as the interest of the remainderman or reversioner is concerned, is valid and effectual and gives the plaintiff company full right, as against all the world save and except the life-tenant, Mrs. Altman; and it is believed that the most she could do in the premises, would be to prevent any development under the lease without her consent. So the important question first pressing for solution is: Is the lease of 1893 still in force, or has it for any cause become forfeit by its own terms?

The provision for forfeiture, in case of non-completion of a well, and non-payment of rent, is plain and unambiguous, and cannot well be misunderstood.

"If no well is completed within one year, then this grant shall become null and void, unless second party shall pay first party $70.00 for each year thereafter, such completion is delayed."

It is certain no well was ever drilled, nor was any rental paid for delay. One or the other of the conditions must have been performed to save the grant from becoming null and void. Either the completion of a well, or the payment of rent is essential to save the grant; and neither has occurred. Defendants seem to believe, that in some mysterious way the tender and offer to pay rent, in 1897, in May, more than three years after the lease became void for non-completion of a well by its own terms, had the effect to open up the defaulted payment, and restore defendants to their rights under the lease, precisely as they were at the expiration of the year allowed for the completion of a well, when they had the right to prolong the life of the lease by the payment of rent. We think this view cannot be entertained or considered as in any way justified by the wording of the lease. The provision is, that the term of the lease can be continued, or rather, the grant saved from becoming void, by the payment of money. Something active must be done to save a forfeiture. Payment must be made to have a saving effect. The provision is not a negative one, but is distinctly affirmative, and no construction, even the most strained, will allow the defendants to save their rights under the lease, on credit. Money down—Cash in advance and "no credit here" seems to be the rule established by the contract under consideration. The affirmative, active things required by the stipulations of the lease, to save it from becoming null and void, were not done or attempted; and the conclusion seems imperative, that the lease became void by the force of its own provisions. The provision for forfeiture, in this case, is mandatory, and does not merely confer on the leasor an option to declare a forfeiture for his own protection, but provides for forfeiture absolutely, unless the leasee does something to prevent it. But if that were not so, and, as has been held by the Supreme Court in one case, the provision of forfeiture is for the benefit of the lessor and gave him an option or election to declare a forfeiture, or not, as he might deem best; and requiring an election, on his part, to terminate the grant; still we are of opinion the term provided by the lease is ended. The making of the lease to plaintiff in 1896, must be regarded as the exercise of the option and an election, by Decker, to terminate the lease of 1893. On either ground, or upon both, we hold the

Kenton Gas and Electric Co. v. Dorney et al.

lease to Dorney & Harris, made in 1893, has become void and of no effect.

We are also of opinion that the lease executed by the life tenant in 1897, was ineffectual to vest in defendants any interest in the seventy acres, by reason of want of power in the life tenant to convey such interest. It was well settled that a tenant for life, in possession of real estate, has no right or power to defeat the title or injuriously affect the interest of the remainderman, by alienating or disposing of some portion of the real estate; or even by using it in such way as to injure the reversionary interest and depreciates its value. The commission of waste forfeits the life estate to the remainderman. The Supreme Court holds, that petroleum, oil and gas in their place in land, is part of the realty, and so remains until it is produced, when its character changes and it becomes chattel property. In this respect, petroleum is similar to standing and growing timber. While standing and growing it is real estate, but when severed, it becomes personal property. A life tenant would have no more right to contract away the mineral part of the land, than to dispose of the standing and growing timber. The doing of either would amount to waste, and would have the effect to forfeit the life estate to the reversioner. The old lady took one step toward the commission of waste, but retraced and withdrew before consummating it. To enforce her contract would be to enforce a wrong, and would have the effect to deprive her of her only means of support in the sunset of her life; and this the court declines to do. The defendants Dorney & Harris acquired no rights—no legal rights—under the lease from the old lady; and it seems to us certain the lease of 1893 became null and void, by its own terms, in 1894, and certainly so in 1896; and from any view we are able to take, Dorney & Harris have nothing of interest in the seventy acres in controversy. Plaintiff has some interest—has a valid and subsisting contract of lease from the remainderman, that entitles it to maintain this action, and, with the consent of the life tenant, may entitle it to operate the land for oil and gas.

There will be a finding for plaintiff, and the injunction will be made perpetual, with costs to the defendants.

*Frank C. Daugherty* and *Jno. E. Betts*, for plaintiff.

*Blackford & Blackford*, for defendants.